1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd., No. 309
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
***Counsel for Plaintiffs and the Proposed***
***Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

EVLYN ANDRADE-HEYMSFIELD,
SHANNON KAWLECKI and PAMELA
PARRA on behalf of themselves, all others
similarly situated, and the general public,

Plaintiffs,

v.

DANONE US, INC.,

Defendant.

Case No: 19-cv-0589-CAB-WVG

<u>CLASS ACTION</u>

**FIRST AMENDED COMPLAINT FOR
VIOLATIONS OF CAL. BUS. & PROF.
CODE §§ 17200 *et seq.*; CAL. BUS. &
PROF. CODE §§ 17500 *et seq.*; CAL.
CIV. CODE §§ 1750 *et seq.*; N.Y. GEN.
BUS. L. § 349; N.Y. GEN. BUS. L. § 350;
and BREACH OF EXPRESS &
IMPLIED WARRANTIES**

<u>DEMAND FOR JURY TRIAL</u>

Plaintiffs Evlyn Andrade-Heymsfield, Shannon Kawlecki and Pamela Parra, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby sue Defendant Danone US, Inc. ("Danone"), and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief, including the investigation of their counsel.

## **INTRODUCTION**

1.      Reliable and compelling scientific studies demonstrates that the oil or fat from coconuts detrimentally affects the body's cardiovascular system, increasing risk of heart disease—the number one cause of death in the United States. Because of its harmful effects and because it "has no known offsetting favorable effects" the American Heart Association and other groups have warned and advised against its consumption.

2.      Despite compelling scientific evidence demonstrating the harmful effects of consuming the oil or fat from coconuts, Danone markets and sells So Delicious Coconut Milk (the "Product"), which is primarily coconut oil in water, to health conscious consumers using deceptive health and wellness labeling claims, with the goal of increasing the price and sales of the Product. The Product's labeling also violates several federal and California state food regulations that are intended to prevent consumer deception.

3.      Plaintiffs Andrade-Heymsfield and Kawlecki, who purchased the Product in reliance on the deceptive and unlawful labeling claims, bring this action challenging Defendant's deceptive labeling practices, on behalf of themselves and all others similarly situated consumers in California, alleging violations of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*, "CLRA"), Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*, "UCL"), False Advertising Law (*id.* § 17500, *et seq.*, "FAL"), and breaches of express and implied warranties under California law.

4.      Ms. Parra, who purchased the Product in reliance on the deceptive and unlawful labeling claims, brings claims on behalf of herself and all others similarly situated consumers in California, alleging violations of the New York's Unfair and Deceptive

Business Practices Law, N.Y. Gen. Bus. L. § 349 ("UDBP") and False Advertising Law, N.Y. Gen. BUS. L. § 350, breaches of express warranties under New York law.

5.      Plaintiffs seek an order compelling Defendant to (a) cease marketing the Product using the misleading, unlawful, or unfair tactics complained of herein, (b) restore the amounts by which it has been unjustly enriched, and (c) pay restitution, compensatory, statutory, and punitive damages as allowed by law.

## PARTIES

6.      Plaintiff Evlyn Andrade-Heymsfield is a resident of San Diego County and citizen of California.

7.      Plaintiff Shannon Kawlecki is a resident of Kern County and citizen of California.

8.      Plaintiff Pamela Parra is a resident of Nassau County and a citizen of New York.

9.      Defendant Danone US, Inc. ("Danone") is a Delaware Corporation, with its principal place of business in White Plains, New York.  In August of 2018, The WhiteWave Food Company changed its name to Danone US, Inc. The WhiteWave Food Company held itself out to be "a leading consumer packaged food and beverage company that manufactures, markets, distributes, and sells branded plant-based foods and beverages, coffee creamers and beverages, premium dairy products and organic produce throughout North America."[1] In October of 2014, The WhiteWave Food Company acquired So Delicious® Dairy Free, through which Defendant, Danone, now sells the Product.[2]

---

[1] White Wave, "The WhiteWave Foods Company Completes Acquisition of So Delicious® Dairy Free" (October 31, 2014), *available at* https://www.whitewave.com/wp-content/uploads/2016/03/PressRelease_10.31.pdf.

[2] White Wave, "What We Make," *available at* https://www.whitewave.com/what-we-make.

## JURISDICTION & VENUE

10.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Defendant. In addition, more than two-thirds of the members of the class reside in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

11.     The Court has personal jurisdiction over Defendant because it has purposely availed itself of the benefits and privileges of conducting business activities within California, specifically, by intentionally distributing, marketing, and selling the Product in California.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff Andrade-Heymsfield resides in and suffered injuries as a result of Defendant's acts in this District. Thus, many of the acts and transactions giving rise to this action occurred in this District. Further, Defendant is subject to personal jurisdiction in this District.

## FACTS

### I.     The Composition of So Delicious Coconut Milk

13.     Coconut "milk" is an emulsion of coconut oil droplets suspended in water. It is made through an process where the coconut meat ("copra") is pressed to "release" the oil from the meat. Thus, plain coconut milk is essentially just coconut oil in water.

14.     The Product, So Delicious Coconut Milk, is sold in several flavors, but regardless of flavor, according to the Nutrition Facts box, each 1-cup serving contains 5 grams of total fat, 4 grams of which is saturated fat.

15.     According to the So Delicious Coconut Milk Nutrition Facts boxes, regardless of flavor, the Product contains less than 10 percent of the Reference Daily Intake ("RDI") or Daily Reference Value ("DRV") for Vitamin C, Iron, protein, or fiber per 1-cup serving.

16.     According to the So Delicious Coconut Milk Nutrition Facts boxes, regardless of flavor, a serving of the Product contains 10 percent Vitamin A and Calcium, and 30 percent Vitamin D. These vitamins and minerals are only naturally present in coconut milk in trace amounts, and almost all of the amounts present in the Product are present because they added through Vitamin A Acetate, Vitamin $D_2$, and Tricalcium Phosphate, respectively. The Product also only contains appreciable amounts of Magnesium, Selenium, Zinc, and Vitamin $B_{12}$, because they are added through Magnesium Phosphate, L-Selenomethionine, Zinc Oxide, and Vitamin $B_{12}$.

17.     In short, absent fortification, the Product would provide essentially no vitamins or minerals.

18.     Further, as demonstrated by the scientific studies cited below, coconut milk, which is basically coconut oil (which is almost entirely saturated fat) suspended in water, is unhealthy.

## II.     Saturated Fat Consumption Increases the Risk of Cardiovascular Heart Disease and Other Morbidity

### A.     The Role of Cholesterol in the Human Body

19.     Cholesterol is a waxy, fat-like substance found in the body's cell walls. The body uses cholesterol to make hormones, bile acids, vitamin D, and other substances. The body synthesizes all the cholesterol it needs, which circulates in the bloodstream in packages called lipoproteins, of which there are two main kinds—low density lipoproteins, or LDL cholesterol, and high density lipoproteins, or HDL cholesterol.

20.     LDL cholesterol is sometimes called "bad" cholesterol because it carries cholesterol to tissues, including the arteries. Most cholesterol in the blood is LDL cholesterol.

21.     HDL cholesterol is sometimes called "good" cholesterol because it takes excess cholesterol away from tissues to the liver, where it is removed from the body.

**B.     High Total and LDL Blood Cholesterol Levels are Associated with Increased Risk of Morbidity, Including Coronary Heart Disease and Stroke**

22.     Total and LDL cholesterol blood levels are two of the most important risk factors in predicting coronary heart disease (CHD), with higher total and LDL cholesterol levels associated with increased risk of CHD.[3]

23.     High LDL cholesterol levels are dangerous because "[e]levated blood LDL cholesterol increases atherosclerotic lipid accumulation in blood vessels."[4] That is, if there is too much cholesterol in the blood, some of the excess may become trapped along artery walls. Built up formations of cholesterol on arteries and blood vessels are called plaque. Plaque narrows vessels and makes them less flexible, a condition called atherosclerosis.

24.     This process can happen to the coronary arteries in the heart and restricts the provision of oxygen and nutrients to the heart, causing chest pain or angina.

25.     When atherosclerosis affects the coronary arteries, the condition is called coronary heart disease, or CHD.

26.     Cholesterol-rich plaques can also burst, causing a blood clot to form over the plaque, blocking blood flow through arteries, which in turn can cause an often-deadly or debilitating heart attack or stroke.

---

[3] *See, e.g.*, Dr. Dustin Randolph, *Coconut Oil Increases Cardiovascular Disease Risk and Possible Death Due to Heart Attacks and Stroke* (Sept. 19, 2015) ("Heart attack and stroke risk can be largely predicted based on total and LDL cholesterol levels in people" because "as cholesterol levels increase so does one's risk of symptomatic and deadly heart disease."), *available at* http://www.pursueahealthyyou.com/2015/04/coconut-oil-increases-cardiovascular.html.

[4] USDA Center for Nutrition Policy and Promotion, *Dietary Saturated Fat and Cardiovascular Health: A Review of the Evidence*, Nutrition Insight 44 (July 2011) [hereinafter, "USDA, Review of the Evidence"], *available at* http://www.cnpp.usda.gov/sites/default/files/nutrition_insights_uploads/Insight44.pdf.

27.     Thus, "[f]or the health of your heart, lowering your LDL cholesterol is the single most important thing to do."[5]

**C.     Saturated Fat Consumption Causes Increased Total and LDL Blood Cholesterol Levels, Increasing the Risk of CHD and Stroke**

28.     The consumption of saturated fat negatively affects blood cholesterol levels because the body reacts to saturated fat by producing cholesterol. More specifically, saturated fat consumption causes coronary heart disease by, among other things, "increas[ing] total cholesterol and low density lipoprotein (LDL) cholesterol."[6]

29.     Moreover, "[t]here is a positive linear trend between total saturated fatty acid intake and total and low density lipoprotein (LDL) cholesterol concentration and increased risk of coronary heart disease (CHD)."[7]

30.     This linear relationship between saturated fat intake and risk of coronary heart disease is well established and accepted in the scientific community.

31.     For example, the Institute of Medicine's Dietary Guidelines Advisory Committee "concluded there is strong evidence that dietary [saturated fatty acids] SFA increase serum total and LDL cholesterol and are associated with increased risk of [cardiovascular disease] CVD."[8]

---

[5]     Pritikin Longevity Center, *Is Coconut Oil Bad for You?*, *available at* https://www.pritikin.com/your-health/healthy-living/eating-right/1790-is-coconut-oil-bad-for-you.html.

[6] USDA Review of the Evidence, *supra* n.4.

[7] Institute of Medicine, *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids*, at 422 (2005) [hereinafter "IOM, Dietary Reference Intakes"], *available at* http://www.nap.edu/catalog.php?record_id=10490.

[8] USDA Review of the Evidence, *supra* n.4.

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
First Amended Class Action Complaint

32.     In addition, "[s]everal hundred studies have been conducted to assess the effect of saturated fatty acids on serum cholesterol concentration. In general, the higher the intake of saturated fatty acids, the higher the serum total and low density lipoprotein (LDL) cholesterol concentrations."[9]

33.     Importantly, there is "no safe level" of saturated fat intake because "any incremental increase in saturated fatty acid intake increases CHD risk."[10]

34.     For this reason, while the Institute of Medicine sets tolerable upper intake levels (UL) for the highest level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all individuals in the general population, "[a] UL is not set for saturated fatty acids."[11]

35.     In addition, "[t]here is no evidence to indicate that saturated fatty acids are essential in the diet or have a beneficial role in the prevention of chronic diseases."[12]

36.     Further, "[i]t is generally accepted that a reduction in the intake of SFA [saturated fatty acids] will lower TC [total cholesterol] and LDL-cholesterol."[13]

37.     For these reasons, "reduction in SFA intake has been a key component of dietary recommendations to reduce risk of CVD."[14]

---

[9] IOM, Dietary Reference Intakes, *supra* n.7, at 481.

[10] *Id.* at 422.

[11] *Id.*

[12] *Id.* at 460.

[13] Shanthi Mendis et al., *Coconut fat and serum lipoproteins: effects of partial replacement with unsaturated fats*, 85 Brit. J. Nutr. 583, 583 (2001) [hereinafter "Mendis, Coconut fat"].

[14] USDA Review of the Evidence, *supra* n.4.

38.     The Institute of Medicine's Dietary Guidelines for Americans, for example, "recommend reducing SFA intake to less than 10 percent of calories."[15] And "lowering the percentage of calories from dietary SFA to 7 percent can further reduce the risk of CVD."[16]

39.     In short, consuming saturated fat increases the risk of CHD and stroke.[17]

## D.     In Contrast to Saturated Fat, the Consumption of Dietary Cholesterol has No Impact on Blood Cholesterol Levels

40.     For many years, there has been a common misperception that dietary cholesterol affects blood cholesterol levels. According to the USDA and Department of Health and Human Services (DHHS), however, "available evidence shows no appreciable relationship between consumption of dietary cholesterol and serum cholesterol."[18]

41.     In fact, the USDA and DHHS have concluded that "Cholesterol is not a nutrient of concern for overconsumption."[19]

42.     In contrast, the USDA and DHHS state that "[s]trong and consistent evidence from [randomized control trials] shows that replacing [saturated fats] with unsaturated fats, especially [polyunsaturated fats], significantly reduces total and LDL cholesterol."[20]

---

[15] *Id.*

[16] *Id.*

[17] *See* Mendis, Coconut fat, *supra* n.13, at 583.

[18] USDA & DHHS, *Dietary Guidelines for Americans*, Part D., Chapter 1, at 17 (2015) [hereinafter "USDA & DHHS, Dietary Guidelines"], *available at* http://health.gov/dietaryguidelines/2015-scientific-report/pdfs/scientific-report-of-the-2015-dietary-guidelines-advisory-committee.pdf.

[19] *Id.*

[20] *Id.* Part D, Chapter 6, at 12.

43.     Therefore, the USDA and DHHS specifically recommend replacing "tropical oils (e.g., palm, palm kernel, **and coconut oils**)" with "vegetable oils that are high in unsaturated fats and relatively low in SFA (e.g., soybean, corn, olive, and canola oils)."[21]

**III.     Because of its Coconut Oil Content, which is mainly saturated fat, Consumption of Coconut Milk Increases Risk of Cardiovascular Disease and Other Morbidity**

44.     Although it is well established that diets generally high in saturated fatty acids increase the risk of CHD,[22] several studies have specifically shown that consuming coconut oil—which is approximately 90 percent saturated fat—increases the risk of CHD and stroke.

45.     For example, in 2001 the British Journal of Nutrition published a 62-week intervention study that examined the "effect of reducing saturated fat in the diet . . . on the serum lipoprotein profile of human subjects."[23] The study had two intervention phases. In Phase 1 (8 weeks), "the total fat subjects consumed was reduced from 31 to 25 % energy . . . by reducing the quantity of coconut fat (CF) in the diet from 17.8 to 9.3 % energy intake."[24] "At the end of Phase 1, there was a 7.7 % reduction in cholesterol and 10.8 % reduction in LDL and no significant change in HDL and triacylglycerol."[25]

46.     In Phase 2 (52 weeks), the total fat consumed by subjects was reduced from 25 to 20 % energy by reducing the coconut fat consumption from 9.3 to 4.7 % energy intake.[26]

---

[21] *Id.* (emphasis added).

[22] *See* Mendis, Coconut fat, *supra* n.13, at 583.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

9

At the end of phase 2, these subjects exhibited a 4.2% mean reduction of total cholesterol and an 11% mean reduction in LDL cholesterol.[27]

47.     The authors of the study noted that "[a] sustained reduction in blood cholesterol concentration of 1 % is associated with a 2-3 % reduction of the incidence of CHD (Law et al. 1994)." Further, "[i]n primary prevention, a reduction of cholesterol by 20% has produced a 31% reduction in recurrent coronary morbidity, a 33% reduction in coronary mortality, and 22% less total mortality (Grundy, 1997)."[28]

48.     Based on these relationships, the researchers estimated that "the reduction in coronary morbidity and mortality brought about by the current dietary intervention would be of the order of about 6-8 %."[29]

49.     Simply put, the results of the yearlong study showed that reducing coconut oil consumption "results in a lipid profile that is associated with a low cardiovascular risk."[30]

50.     The detrimental health effects of consuming coconut oil are not limited to long-term consumption. To the contrary, a 2006 study published in the Journal of the American College of Cardiology found that consuming a single high-fat meal containing fat from coconut oil "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[31] In the study, researchers examined the effect of consuming a single isocaloric meal that contained "1 g of fat/kg of body weight," with "coconut oil (fatty acid composition: 89.6% saturated fat, 5.8% monounsaturated, and 1.9% polyunsaturated fat)" as the source of

---

[27] *Id.* at 586.

[28] *Id.* at 588.

[29] *Id.*

[30] *Id.* at 587.

[31] Stephen J. Nicholls et al., *Consumption of Saturated Fat Impairs the Anti-Inflammatory Properties of High-Density Lipoproteins and Endothelial Function*, 48 J. Am. Coll. Cardio. 715 (2006).

fat.[32] They found that consuming the coconut oil meal significantly "reduces the anti-inflammatory potential of HDL and impairs arterial endothelial function."[33] In contrast, when the fat from the same isocaloric meal came from "safflower oil (fatty acid composition: 75% polyunsaturated, 13.6% monounsaturated, and 8.8% saturated fat)," "the anti-inflammatory activity of HDL improve[d]."[34]

51.     Other studies have similarly demonstrated that coconut oil consumption negatively affects blood plasma markers when compared to other fats.

52.     A 2011 study published in the American Journal of Clinical Nutrition found that consuming coconut oil, unlike consuming palm olein and virgin olive oil, decreased postprandial lipoprotein(a), which is associated with an increased the risk of cardiovascular disease.[35]

53.     Similarly, a study comparing the effects of consuming coconut oil, beef fat, and safflower oil found that coconut oil consumption had the worst effect on subjects' blood lipid profiles.[36] The authors noted that "[o]f these fats, only CO [coconut oil] appears to consistently elevate plasma cholesterol when compared with other fats."[37]

54.     In another study, researchers found that that subjects who consumed 30 percent of energy from fat, with 66.7% coming from coconut oil, had "increased serum cholesterol,

---

[32] *Id.*

[33] *Id.*

[34] *Id.* at 715.

[35] P.T. Voon et al., *Diets high in palmitic acid (16:0), lauric and myristic acids (12:0 + 14:0), or oleic acid (18:1) do not alter postprandial or fasting plasma homocysteine and inflammatory markers in healthy Malaysian adults*, 94 Am. J. Clin. Nutr. 1451 (2011).

[36] Raymond Reiser et al., *Plasma lipid and lipoprotein response of humans to beef fat, coconut oil and safflower oil*, 42 Am. J Clin. Nutr. 190, 190 (1985).

[37] *Id.*

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT

LDL, and apo B."[38] Apo B is a protein involved in the metabolism of lipids and is the main protein constituent of VLDL (very low-density lipoproteins) and LDL. Concentrations of apo B tend to mirror those of LDL, so the higher the level of apo B, the greater the risk of heart disease. In sum, the study found that consuming coconut oil increased all three cholesterol markers, signifying an increased risk of cardiovascular disease.[39]

55.     In short, as the American Heart Association recently and succinctly stated, "because coconut oil increases LDL cholesterol, a cause of [cardiovascular disease], and *has no known offsetting favorable effects*, we advise against the use of coconut oil" (emphasis added).[40]

**IV.    The Manufacture, Marketing, and Sale of So Delicious Coconut Milk**

    **A.    The History and Sale of the So Delicious Coconut Milk Product**

56.     The So Delicious Coconut Milk Product has been sold on a nationwide basis, including in California and New York, since approximately 2010.

57.     As seen below, So Delicious Coconut Milk is sold in 32-fluid-ounce and 64-fluid-ounce (half gallon) sizes and in various flavors.

---

[38] V. Ganji & C.V. Kies, *Psyllium husk fiber supplementation to the diets rich in soybean or coconut oil: hypercholesterolemic effect in healthy humans*, 47 Int. J. Food Sci. Nutr. 103 (Mar. 1996).

[39] *Id.*

[40] American Heart Association, *Dietary Fats and Cardiovascular Disease: A Presidential Advisory From the American Heart Association*, Circulation (June 15, 2017), available at http://circ.ahajournals.org/content/early/2017/06/15/CIR.0000000000000510.



58.     During the Class Period, it was sold in flavors including: (a) Original, (b) Unsweetened, (c) Chocolate, (d) Vanilla, (e) Unsweetened Vanilla, and (f) Sugar Free.

59.     According to the So Delicious website, the Product is sold nationally at major retailers such as Walmart, Target, CVS Pharmacy, Meijer, Sprouts Farmers Market, Vons, Gelson's Market, Whole Foods Market, and Kroger Stores.[41]

## V.     The Product is Marketed with Misleading Health and Wellness Claims

60.     Consumers are generally willing to pay more for foods they perceive as being healthy, or healthier than other alternatives. Nielsen's 2015 Global Health & Wellness Survey, for instance, found that "88% of those polled are willing to pay more for healthier foods."[42]

61.     On its website, Danone has publicly acknowledged that consumers are "increasingly aware of the impact that food and drink have on their health." It further claims that, "[a]t Danone, we believe that the rise of plant-based foods is intimately related to the ongoing Food Revolution: a movement aimed at nurturing the adoption of healthier, more

---

[41] So Delicious, Store Locator, *available at* http://sodeliciousdairyfree.com/store-finder.

[42] Nancy Gagliardi, Forbes, Consumers Want Healthy Foods--And Will Pay More For Them (Feb. 18, 2015) (citing Neilson, 2015 Global Health & Wellness Survey, at 11 (Jan. 2015)).

sustainable eating and drinking habits. The plant-based category is a prime example of this paradigm change."[43]

62.    Danone claims, "[w]e are also bearing in mind the needs of the new food generation as well as plant-based consumers' main drivers which are naturality, taste, sustainability and *health*" (emphasis added).[44]

63.    Thus, Danone is well aware of consumers' preference for healthful foods, and therefore employs, and has employed throughout the Class Period, a strategic marketing campaign intended to convince consumers that So Delicious Coconut Milk is healthful, despite that it is almost entirely composed of unhealthy saturated fat, which increases risk of serious diseases.

64.    Through statements on the So Delicious website, Danone portrays itself as a company "making food that's good for you"[45] and products "that you can feel good about sipping, biting, pouring, scooping licking and chugging throughout your day."[46]

65.    In addition to holding itself out as a health-food company and representing So Delicious as a health-food brand, as seen in the screen captures of the So Delicious website, Defendant has also utilized this platform to extol the "Health Benefits" of coconut milk.[47]

---

[43] Danone, *Consumers' Habits are Constantly Shifting and So are We!* (April 12, 2018), *available at* https://www.danone.com/stories/articles-list/consumers-habits-shifting.html.

[44] *Id.* (citing "Plant-based drivers and barriers 2017").

[45] Danone, So Delicious Dairy Free, *available at* http://sodeliciousdairyfree.com/.

[46] Danone, So Delicious Dairy Free, "About Us," *available at* http://sodeliciousdairyfree.com/about-us.

[47] The screen shots below were taken from a January 7, 2017 internet archive capture of the So Delicious website's "Why Coconuts" subpage (http://sodeliciousdairyfree.com/why-coconuts), *available at* https://web.archive.org/web/20170107020024/http://sodeliciousdairyfree.com/why-coconuts.

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT



OUR PRODUCTS   GET RECIPES   ABOUT US   THRIVE BLOG   STORE FINDER   SITE SEARCH

## What's So Great About Coconuts?

For centuries cultures around the world have revered and relied upon coconut for its nutritional powers and infinite practical uses. Native tradition attributes healing and life-giving properties to the fruit-bearing palm, which is why it is often called, 'Tree of Life'.



### GREAT COCONUT RECIPES

CHOCOLATE DECADENCE
SMOOTHIE BOWL

GLUTEN-FREE BANANA FLAX
PANCAKES



Love Coconut?
THEN WE BET YOU'LL LOVE:

COCONUT MILK BEVERAGES
CULTURED COCONUT MILKS



### COCONUT HEALTH BENEFITS & FACTS

In western society, the health benefits of coconuts are just beginning to be understood. The mystery appears to be in the favorable fats found in coconut. Although coconut contains saturated fat, a closer examination shows that not all saturated fats pose a health problem. Saturated fat chains exist in a variety of lengths which impact the body differently.

Research has demonstrated that Long Chain Triglycerides (LCT) represent the most sinister saturated fat. LCTs exist primarily in foods derived from animals and have been linked to heart disease and a number of other chronic conditions. The body stores LCTs as fat. Americans consume an excess amount of animal-sourced LCT, which drives many of the health problems in this country.

Coconut represents a vegetarian-sourced saturated fat consisting of medium chain fatty acids (MCFA). Scientists have long recognized MCFAs such as lauric and capric acid for their anti-viral and anti-microbial properties. The body utilizes MCFAs as energy instead of storing them as fat.

Here are just a few health benefits ascribed to coconut:

- Coconut consuming cultures around the world have lower incidence of heart disease than Americans.
- Lauric acid exists abundantly in coconut and plays a fundamental role in building your body's immune system. Once in your system it transforms into an antibacterial and antiviral substance called "monolaurin" which destroys viruses and diseases.
- Lauric acid also occurs naturally in human breast milk and plays a vital role in nourishing and protecting babies from infections.
- MCFAs promote weight maintenance without raising cholesterol levels. They work best for preventing weight gain if you're not overweight or maintaining your new weight after a successful diet.

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT

66.    In addition, during the Class Period, the Product was expressly promoted as being able to help consumers maintain healthy bones and prevent osteoporosis.[48]





A Balanced Approach To Bone Health

Why we need more than calcium for healthy bones and how So Delicious® Coconut Milk Beverage can help achieve this.

OUR HEALTHIEST RECIPES

CRANBERRY COCONUT SMOOTHIE
TANDOORI MMM SAUCE
SLOW COOKER PEAR ROSE
CARDAMOM CAKE OATMEAL



Get in Touch
WE LOVE TO
CONNECT

Please contact us with any questions or concerns you may have about our products at 844-349-6329 or contact us.

SUMMARY

We all want peace of mind that we are doing everything we can to have strong bones. When it comes to bone health, it is important to think in terms of balance.

Many of us assume that calcium and vitamin D are sufficient for strong bones, but this is only partly true. Our bones are living tissue, active every day and feed on a variety of important minerals that work in concert to build and maintain a strong and resilient skeleton.

In particular, we need magnesium in sufficient quantity, but this important mineral is often over-looked and under-appreciated. Most Americans do not get enough of it because it is routinely refined out of processed foods, and foods that provide good sources of magnesium are not part of a modern diet. Thus achieving regular intake of magnesium needs to be a conscious choice.

That's why So Delicious® Coconut Milk Beverage is fortified with the proper balance of calcium, magnesium and Vitamin D for healthy bones and maximum calcium absorption.

WHY HEALTHY BONES ARE IMPORTANT

---

[48] The screen shots below were taken from a January 7, 2017 internet archive capture of the So Delicious website's "Why Coconuts" subpage (http://sodeliciousdairyfree.com/bone-health), *available at* https://web.archive.org/web/20170107020406/http://sodeliciousdairyfree.com/bone-health. Although the references to osteoporosis on the Product's labeling are now less direct, at one

Our skeletons are composed of bone, a living tissue that is active in our bodies every day. In addition to providing the structural support that allows us to stand, walk, and play, our bones serve as important nutrient reservoirs and storage sites for minerals that are used in our blood and nervous systems.

The amount of bone mineral that gets deposited during our childhood and adolescence may well be the most important determinant of getting osteoporosis in later life. And while genetics, gender, and race impact our risk for osteoporosis, diet and weight-bearing physical activity can reduce that risk. What's more, these are elements we can control.

## IT'S NOT JUST ABOUT CALCIUM

About 2/3 of the weight of our bones are minerals, including calcium, phosphorous, magnesium, fluoride, and others. Most people know the importance of consuming adequate calcium and vitamin D for skeletal health, but other nutrients are also involved, such as magnesium, phosphorus, protein, and potassium.

Did you know that magnesium is the fourth most abundant mineral in the body? Like calcium, the levels of magnesium are tightly controlled in the blood stream. This is because magnesium, like calcium, is involved in managing moment-to-moment activities such as nerve transmission, muscle contraction, and blood pressure.

## MOST AMERICANS DON'T GET ENOUGH MAGNESIUM.

## DOES THAT INCLUDE YOU?

The average intake of magnesium among women in the US is only 68% of the RDA or Recommended Dietary Allowance. In fact, the most recent national nutrition surveys report that on average, more than half of all Americans – including children, teens, adults, and seniors – are not consuming enough magnesium every day. Intake among teenage boys and girls is alarmingly low, and so is their consumption of calcium and vitamin D. That's a serious problem, because the teen years are a critical time for establishing strong and resilient bones for life. Consuming too little of the nutrients necessary for building healthy bones will likely create serious health consequences later in life.

## WHERE CAN YOU GET MAGNESIUM?

The best food sources of magnesium are beans, whole grains, green vegetables, nuts and seeds. Other sources include dairy products, meats, and chocolate. You can also get 10% of your DV or Daily Value of magnesium from one serving of So Delicious® Coconut Milk Beverage. See Table 1.

---

point the label of the Product claimed: "For decades, we have known about the important role that calcium plays in achieving and maintaining strong bones and helping to prevent osteoporosis. But did you know that magnesium also plays a very important role. Magnesium aids in the body's absorption of calcium and is also instrumental in the strength and formation of bones and teeth. This means that those at risk for osteoporosis can benefit from taking, not only calcium but magnesium as well. So Delicious Dairy Free Coconut Milk Beverage is fortified with the proper balance of calcium, magnesium and Vitamin D for healthy bones and maximum calcium absorption."

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT

67. Today, Danone continues to use the So Delicious website, to portray itself as a company "making food that's good for you" and "you can feel good about."[49]

68. Danone, even uses employee testimonials, like the following, to create the aura that its products are healthy: "'The quality of life that we live is derived from the quality of food that we eat. There is a true privilege in working for a company that strives on a daily basis to produce products that are high quality, healthy and natural.'– Mark C."[50]

69. Because of the importance and appeal of health food to consumers, and in an attempt to convince consumers that its products are healthy, Defendant claims that "we are poised to make an even greater difference in the world and aspire to bring health through food to as many people as possible."[51]

---

[49] Danone, So Delicious Dairy Free, *available at* http://sodeliciousdairyfree.com/.

[50] Danone, So Delicious Dairy Free, "Healthy Resources," *available at* http://sodeliciousdairyfree.com/healthy-resources.

[51] Danone, "Our Business," *available at* http://www.danonenorthamerica.com/our-business/.

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT

70.     These claims are false and misleading because, the Product is not healthful, but actually detriments health.

**A.     The Product's Misleading Labeling Claims**

      **1.     The Product Bore Misleading Health and Wellness Claims Directly on its Labeling Throughout the Class Period**

71.     As part of its health and wellness marketing strategy, Danone placed and continues to place misleading health and wellness claims directly on the Product's labeling.

72.     Although the labeling of the Product has since been refreshed, exemplars of the Product's misleading labeling that was used earlier in the Class Period are shown below.



*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT





73.     Except for immaterial differences, such as in the flavor name and color, the packaging of each flavor is essentially identical, including the challenged claims.

74.     During the Class Period, the Product's labeling bore the phrase, "Naturally Energizing. Consumption of 'good fats' is an important part of a balanced diet. The fat in coconut milk contains approximately 60% medium chain fatty acids (M.C.F.A.s), which are more easily burned by your body as energy." This claim, taken individually and in context of the label as a whole, is false and misleading because it conveys that the Product is healthful and composed of good fats that will not harm health, when in fact the Product is actually unhealthy and contains dangerous amounts of saturated fat, the consumption of which causes morbidity including heart disease and stroke.

75.     This claim is further false and misleading because it is incorrect to characterize coconut milk as containing "approximately 60% medium chain fatty acids (M.C.F.A.s)." While coconut oil is approximately 60% caprylic acid, capric acid, and lauric acid, approximately 80 percent of this is lauric acid (approximately 50% of the total fat in coconut oil). Lauric acid, however, is not properly characterized as a medium chain triglyceride or fatty acid. In contrast to the shorter 8- and 10-carbon chain caprylic and capric fatty acids, 12-carbon chain lauric acid "behaves more as a long-chain fatty acid [in terms of digestion and metabolism]." Because of its greater length, most lauric acid cannot be transported to the liver without first being esterified into chylomicron triglycerides. In fact, "the majority of [lauric acid] (70%–75%) is absorbed with chylomicrons." "It is therefore inaccurate to consider coconut oil,'" or in this case a Product with its fat content coming entirely from coconut oil, "to contain either predominantly medium-chain fatty acids or predominantly medium-chain triglycerides."[52] "A common misconception is that the SAFA [saturated fatty acids] in coconut oil are mainly medium chain fatty acids [MCFAs], which are metabolized differently from long-chain SAFA [saturated fatty acids]. Actually, coconut oil is mainly C12:0 lauric acid and C14:0 myristic acid, which have potent LDL-C-raising effects."[53] Thus, the assertion that approximately 60 percent of the fatty acids in coconut milk are MCFAs that are "more easily burned by your body as energy" is false and misleading.

76.     Further, highlighting the presence of what are characterized as "good" MCFAs misleadingly creates what is well known in psychology and marketing as a "'health halo[],' in which a claim about single healthy quality gives rise to more positive impression of other,

---

[52] Eyres L. et al., *Coconut oil consumption and cardiovascular risk factors in humans*, 74 Nutr. Rev. 267 (2016).

[53] Zock PL., et al., *Progressing Insights into the Role of Dietary Fats in the Prevention of Cardiovascular Disease*, Curr. Cardiol. Rep. 2016;18(11):111.

nonclaimed qualities."[54] As explained by Natalie Allen, clinical faculty member of the Biomedical Sciences Department at Missouri State University, "[t]he health halo effect is an phenomenon in which a food or food company is perceived as healthy based on one claim."[55] "Research has consistently found that claims on food Product labels have halo effects (Andrews et al., 2011); they have a positive effect on consumers' perceptions about Product characteristics not mentioned in the claim (Andrews et al., 2011; Schuldt, 2013)."[56] Specifically, surveys have shown that "[c]onsumers who viewed a favorable nutrient content claim had significantly more favorable evaluations of fat content and healthiness. (internal examples omitted)."[57] Thus, highlighting the presence of MCFAs and characterizing them as healthful, good fats creates the impression that the Product, as a whole, is healthful. This claim is thus false and misleading, both individually and in context of the label as a whole, because the Product is actually unhealthy and contains dangerous amounts of saturated fat, the consumption of which causes morbidity including heart disease and stroke.  Thus, even with the disclosure of the amount of saturated fat on the Nutrition Label, the statement

---

[54] Catherine Fernan *et al., Health Halo Effects from Product Titles and Nutrient Content Claims in the Context of "Protein" Bars*, Health Communication, at 2 (August 30, 2017), *available at* http://dx.doi.org/10.1080/10410236.2017.1358240.

[55] Melissa Kravitz, "*Brands use this psychological trick to make you think you're buying 'healthy' foods*", (April 18, 2017), *available at:* https://mic.com/articles/173866/brands-use-this-psychological-trick-to-make-you-think-you-re-buying-healthy-foods#.GIe05Cjk2.

[56] Irina A. Iles *et al., Nutrient Content Claims: How They Impact Perceived Healthfulness of Fortified Snack Foods and the Moderating Effects of Nutrition Facts Labels, Health Communication*, Health Communication, at 1 (August 20, 2017) ("Results indicated that the presence of an [Nutrient Content Claim] on a fortified snack food product increased perceived healthfulness of that product, perceptions of the presence of healthful nutrients, and intentions to consume the product. The presence of NCCs also decreased perceptions of the presence of certain less healthful nutrients"), *available at* http://dx.doi.org/10.1080/10410236.2017.1351277.

[57] J. Craig Andrews *et al., Consumer Generalization of Nutrient Content Claims in Advertising*, 62 J. Marketing  62, 67 (Oct. 1998).

touting healthy MCFAs leads a reasonable consumer to believe the fat contained in the Product must be healthy fat.

77.    To further convince consumers that the Product is healthy, during the Class Period, the labeling bore the claim "Optimized for Maximum Calcium Absorption[:] When it comes to bone strength, more calcium isn't always better. So Delicious Coconut Milk Beverage is fortified with the proper balance of calcium, Magnesium, and Vitamin D for maximum calcium absorption." This claim, individually and in context of the label as a whole, is false and misleading, and further contributes to the health halo, creating the misleading impression that the Product as a whole is healthful. The claim also conveys a misleadingly simplistic message regarding what is necessary to maintain strong or healthy bones. For example, while inadequate intake of calcium or calcium and vitamin D contributes to low peak bone mass, which is a risk factor in the development of osteoporosis, adequate calcium and vitamin D intake, is not the only recognized risk factor in the development of osteoporosis, which is a multifactorial bone disease. An overall healthful diet, which the Product does not contribute to, is necessary to reduce risk. Thus, this claim is misleading.

78.    To reinforce this false and misleading message that that the Product is beneficial to health, the statement "For more information on the benefits of our products visit SoDeliciousDairyFree.com," was placed on the Product's labeling during the Class Period. This claim, taken individually and in context of the label as a whole, is false and misleading because it conveys that the Product is healthful or at least will not harm health, when it is actually unhealthy and contain dangerous amounts of saturated, the consumption of which causes morbidity including heart disease and stroke.

79.    During the Class Period, the label also bore the phrase "SO Pure. From our stringent allergen testing methods, to the innovative work we do to be free of the unnecessary and unwanted, rest assured that you're getting nothing but the best of what you are looking for." This claim, taken individually and in context of the label as a whole, is false and

misleading because it conveys that the Product is healthful or at least will not harm health, when it is actually unhealthy and contains dangerous amounts of saturated fat, the consumption of which causes morbidity including heart disease and stroke.

80.     Elsewhere on the label were statements encouraging consumers to consume the Products frequently and in large amounts. For example, the label stated "Once you experience the light, refreshing smoothness of our coconut milk, it won't be long before it takes over your morning and coffee, your mid-day smoothie and that great new dairy-free recipe you'll be compelled to try." The label also encouraged consumers to "chug [So Delicious products] throughout your day." These claims, taken individually and in context of the label as a whole, are false and misleading because contrary to the message that the Product is healthful and can be frequently consumed in large amounts without worry, the Product is unhealthy and contains dangerous amounts of saturated fat, the consumption of which causes morbidity including heart disease and stroke.

## 2.     The Product Continues to Bear Misleading Health and Wellness Claims Directly on its Labeling

81.     During the Class Period, the labeling of the Product has been refreshed, but it still bears similar claims intended to convince consumers that it is healthy and helps maintain healthy bones.

82.     Representative exemplars of the Product's current labeling bearing the challenged claims (on both the 32-fluid-ounce and half gallon (64-fluid-ounce) containers) are shown below.

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19
20
21
22
23
24
25
26
27
28

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT




*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT

83.     Except for immaterial differences, such as the flavor name and background color, the packaging of each flavor is essentially identical, including the challenged misrepresentations.

84.     The Product is labeled with the claim, "nutrition in every sip! Our delicious coconutmilk is a good source of calcium plus an excellent source of vitamin D – nutrients that help maintain healthy bones." This claim taken individually and in context of the label as a whole, is false and misleading because contrary to the message that the Product is healthful or at least will not detriment health, the Product is unhealthy and contains dangerous amounts of saturated fat, the consumption of which causes morbidity including heart disease and stroke. The claim also conveys a misleadingly simplistic message regarding what is necessary to maintain healthy bones. For example, while inadequate intake of calcium or calcium and vitamin D contributes to low peak bone mass, which is a risk factor in the development of osteoporosis, it is not the only recognized risk factor in the development of osteoporosis, which is a multifactorial bone disease. Maintenance of adequate calcium and vitamin D intakes throughout life is necessary to achieve optimal peak bone mass and to reduce the risk of osteoporosis in later life. Further, an overall healthful diet, which the Product does not contribute to, is necessary to reduce risk. Thus, this claim is incomplete and misleading.

85.     Further, by highlighting the presence calcium and vitamin D, and characterizing them as providing health benefits in conjunction with the generalized statement "nutrition in every sip!", the label creates what is well known in psychology and marketing as a "'health halo[],' in which a claim about single healthy quality gives rise to more positive impression of other, nonclaimed qualities."[58] As explained by Natalie Allen,

_____

[58] Catherine Fernan *et al., Health Halo Effects from Product Titles and Nutrient Content Claims in the Context of "Protein" Bars*, Health Communication, at 2 (August 30, 2017), *available at* http://dx.doi.org/10.1080/10410236.2017.1358240.

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT

clinical faculty member of the Biomedical Sciences Department at Missouri State University, "[t]he health halo effect is an phenomenon in which a food or food company is perceived as healthy based on one claim."[59] "Research has consistently found that claims on food Product labels have halo effects (Andrews et al., 2011); they have a positive effect on consumers' perceptions about Product characteristics not mentioned in the claim (Andrews et al., 2011; Schuldt, 2013)."[60] Specifically, surveys have shown that "[c]onsumers who viewed a favorable nutrient content claim had significantly more favorable evaluations of fat content and healthiness. (internal examples omitted)."[61] Thus, highlighting the presence and health benefits of calcium and vitamin D  in conjunction with a generalize statement that it is nutritious, a health halo is created in the reasonable consumer's mind that the Product, as a whole, is healthful and won't detriment health.

86.    The Product's label also bears the claim, "SO Pure. . . . rest assured that you're getting nothing but the best of what you are looking for." This claim, taken individually and in context of the label as a whole, is false and misleading because the Product is unhealthy and contains dangerous amounts of saturated fat, the consumption of which causes morbidity including heart disease and stroke.

---

[59] Melissa Kravitz, "*Brands use this psychological trick to make you think you're buying 'healthy' foods*", (April 18, 2017), *available at*: https://mic.com/articles/173866/brands-use-this-psychological-trick-to-make-you-think-you-re-buying-healthy-foods#.GIe05Cjk2.

[60] Irina A. Iles *et al., Nutrient Content Claims: How They Impact Perceived Healthfulness of Fortified Snack Foods and the Moderating Effects of Nutrition Facts Labels, Health Communication*, Health Communication, at 1 (August 20, 2017) ("Results indicated that the presence of an [Nutrient Content Claim] on a fortified snack food product increased perceived healthfulness of that product, perceptions of the presence of healthful nutrients, and intentions to consume the product. The presence of NCCs also decreased perceptions of the presence of certain less healthful nutrients"), *available at* http://dx.doi.org/10.1080/10410236.2017.1351277.

[61] J. Craig Andrews *et al., Consumer Generalization of Nutrient Content Claims in Advertising*, 62 J. Marketing  62, 67 (Oct. 1998).

87.     Elsewhere on the label are statements encouraging consumers to consume the Products frequently and in large amounts. For example, the label states, "Once you experience the light, refreshing smoothness of our coconutmilk, it won't be long before it takes over your morning cereal and coffee, your mid-day smoothie and that great new dairy-free recipe you'll be compelled to try." This claim, taken individually and in context of the label as a whole, is false and misleading because contrary to the message that the Product is healthful and can be frequently consumed in large amounts without worry, the Product is unhealthy and contains dangerous amounts of saturated fat, the consumption of which causes morbidity including heart disease and stroke.

88.     In sum, the totality of the Product's labeling conveys the concrete message the Product is healthful and can help maintain healthy bones. Danone intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

## VI.     Defendant Deceptively Omits, Intentionally Distracts From, and Otherwise Downplays the Product's Negative Physiological Effects

89.     In conjunction with marketing the Product with claims that convey that the Product is beneficial to health and won't detriment health, Defendant intentionally omits material information regarding the dangers of consuming the Product and its effect on osteoporosis. Defendant is under a duty to disclose this information to consumers because (a) Defendant is revealing some information about the Product—enough to convey it is healthful or conducive to good physical health and good bone health—without revealing additional material information—that its consumption has detrimental health effects and that bone health is complex and has many factors, (b) Defendant's deceptive omissions concern human health, and specifically the detrimental health consequences of consuming the Product or its effect on bone health, (c) Defendant was in a superior position to know of the dangers presented by the Product as a manufacturer of foods whose business depends upon food science and that holds itself out to be a leader in health foods, and (d) Defendant actively concealed material facts not known to Plaintiffs and the Class.

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT

90.     As described above, in marketing the Product, Defendant affirmatively uses certain words and phrases to suggest the Product is healthful or conducive to good health and physical well-being, which is misleading given the negative health consequences of consuming the Product. Likewise the Product suggests that it is beneficial to bone health and will lead to healthy bones, when in fact bone health has many determinants. In light of these voluntary statements, Defendant has a duty to disclose information regarding the harmful effects of consuming the Product.

VII.  **The Labeling of the So Delicious Coconut Milk Product Violates California, New York, and Federal Law**

A.  **Any Violation of Federal Food Labeling Statutes or Regulations is a Violation of New York and California Law**

91.     "California, [and] New York . . . broadly prohibit the misbranding of food in language largely identical to that found in the FDCA." *Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156, at *12 (E.D.N.Y. July 21, 2010).

92.     Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et. seq.* (the "Sherman Law"), California has adopted the federal food labeling requirements as its own, *see*, *e.g.*, *id.* § 110100, *id. §* 110670 ("Any food is misbranded if its labeling does not conform with the requirement for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto."). *See also id.* § 110665.

93.     Similarly, "New York's Agriculture and Marketing law similarly . . . incorporates the FDCA's labeling provisions found in 21 C.F.R. part 101." *Ackerman*, 2010 U.S. Dist. LEXIS 73156, *12 (citing N.Y. Comp. Codes R. & Regs. tit. 1, § 259.1).

94.     The Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. *See* 21 U.S.C. § 343-1.

95.     Because the New York Agriculture and Marketing Law's and the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations they are explicitly authorized by the FDCA.

**B.     The Product's False and Misleading Labeling Claims Render it Misbranded Under California, New York, and Federal Law**

96.     Danone's deceptive statements described herein violate Cal. Health & Safety Code § 110660, N.Y. Agric. & Mkts. Law § 201, and 21 U.S.C. § 343(a), which deem a food misbranded if its labeling is "false or misleading in any particular."

97.     As described above, the Product's labeling contains numerous statements that are false or misleading because they state, suggest, or imply that the Product is healthy, which renders it misbranded.

98.     The Product's labeling is also misleading and misbranded because it fails to meet the standard of identity set forth in 21 C.F.R. § 131.110, and is not nutritionally equivalent.

99.     In addition, the Product's labeling is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21.

100.     Defendant's voluntary and affirmative misrepresentations challenged herein "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such facts include the detrimental health consequences of consuming the Product and other factors other than calcium and vitamin D on bone health and osteoporosis.

101.     Defendant similarly failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use of the article under" both "[t]he conditions prescribed in such labeling," and "such conditions of use as are customary or usual," in violation of § 1.21(a)(2). Namely, Defendant failed to disclose the increased risk of serious

chronic disease likely to result from the usual consumption of its Product or the complexity of determinants to bone health.

### C.   The Product is Misbranded Because it Bears Health Claims, But Does not Meet the Requirements to Make Such Claims

102.   The Product is misbranded because its labeling bears unauthorized health claims.

103.   Under 21 U.S.C. § 343(r)(1)(B), a claim that characterizes the relationship of any nutrient which is of the type required to be in the labeling of the food to a disease or a health-related condition must be made in accordance with a regulation promulgated by the Secretary (or, by delegation, FDA) authorizing the use of such a claim. *See also* Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims" set by federal law.).

104.   A "Health claim means any claim made on the label or in labeling of a food . . . that expressly or by implication, including "third party" references, written statements (e.g., a brand name including a term such as "heart"), symbols (e.g., a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition." 21 C.F.R. § 101.14.

105.   During the Class Period, the Product bore the claim, "Optimized for Maximum Calcium Absorption[:] When it comes to bone strength, more calcium isn't always better. So Delicious Coconut Milk Beverage is fortified with the proper balance of calcium, Magnesium, and Vitamin D for maximum calcium absorption."

106.   Currently the Product bears the claim "nutrition in every sip! Our delicious coconutmilk is a good source of calcium plus an excellent source of vitamin D – nutrients that help maintain healthy bones."

107.    "An inadequate intake of calcium or calcium and vitamin D contributes to low peak bone mass, which has been identified as one of many risk factors in the development of osteoporosis," 21 C.F.R § 101.72 (a) ("Relationship between calcium, vitamin D, and osteoporosis").

108.    Thus, by touting the Product's calcium, vitamin D, and magnesium as being optimized for calcium absorption for "bone strength" or by claiming that calcium and vitamin D are "nutrients that health maintain healthy bones," the Product is making a health claim regarding osteoporosis.

109.    But, the Product fails to meet the requirements for making such a health claim.

110.    To make a health claim regarding calcium, vitamin D, and osteoporosis, the food must, among other things, "meet or exceed the requirements for a 'high' level of calcium as defined in § 101.54(b)." 21 C.F.R § 101.72 (c)(2)(ii)(A).

111.    Under section 101.54(b) a food must "contain[] 20 percent or more of the RDI or the DRV per reference amount customarily consumed [RACC]."

112.    The Product, however only contains 10 percent of the RDI for calcium, half that required to bear a health claim under section 101.72 per one-cup serving, which is the products RACC.[62]

113.    In addition, the Product fails to meet other requirements under sections 101.14, and 101.72 by failing to provide complete and truthful information that is not misleading.

114.    Thus, the Product is misbranded and these labeling statements are misleading.

**D.    The Product is Misbranded Because it Bears Unauthorized Nutrient Content Claims**

115.    The Product is misbranded because its labeling bears unauthorized nutrient content claims.

116.    Under 21 U.S.C. § 343(r)(1)(A), a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in

---

[62] *See* 21 C.F.R. § 101.12(b), Table 2 ("Milk, milk-substitute beverages . . . soy beverage.").

accordance with a regulation promulgated by the Secretary (or, by delegation, FDA) authorizing the use of such a claim. *See also* Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims" set by federal law.).

117.    Characterizing the level of a nutrient on food labels and the labeling of a product without complying with the specific requirements pertaining to nutrient content claims for that nutrient renders a product misbranded under 21 U.S.C. § 343(r)(1)(A).

118.    The Product is misbranded (and also misleading), because the labels bear nutrient content claims using the term healthy, but the Product does not meet the requirements for making such an implied nutrient content claim as set forth in 21 C.F.R. § 101.65(d).

119.    The Product's labeling bears the claim "Nutrition in every sip! Our delicious coconutmilk is a good source of calcium plus an excellent source of vitamin D – nutrients that help maintain healthy bones."

120.    To "use the term 'healthy' or related terms (e.g., 'health,' 'healthful,' 'healthfully,' 'healthfulness,' 'healthier,' 'healthiest,' 'healthily,' and 'healthiness') as an implied nutrient content claim on the label or in labeling of a food that is useful in creating a diet that is consistent with dietary recommendations," a food must satisfy specific "conditions for fat, saturated fat, cholesterol, and other nutrients." 21 C.F.R § 101.65(d)(2).

121.    The Product is "not specifically listed" in the table contained in 21 C.F.R § 101.65(d)(2)(i), and therefore is governed by section (F) of the table. *See* 101.65(d)(2)(i)(F).

122.    Under 21 C.F.R. § 101.65(d)(2)(i)(F), to use a "healthy" term, a food must (1) be "Low fat as defined in § 101.62(b)(2)," and (2) be "Low saturated fat as defined in § 101.62(c)(2)," among other things. *See* 21 C.F.R. § 101.65(d)(2)(i)(F) (incorporating by reference total fat requirement, 21 C.F.R. § 101.62(b)(2), and saturated fat requirement, 21 C.F.R. § 101.62(c)(2)). In addition, the food must comply "with the definition and

declaration requirements in this part 101 for any specific nutrient content claim on the label or in labeling." 21 C.F.R. § 101.65(d)(2)(iii).

123.   Section 101.62(b)(2)(i)(A) provides the applicable definition of "low fat" for the Product because it has a RACC (reference amounts customarily consumed) "greater than 30 g or greater than 2 tablespoons."

124.   Under section 101.62(b)(2)(i)(A), a food is low fat only if it "contains 3 g or less of fat per reference amount customarily consumed."

125.   The Product, regardless of flavor, contains more than 3 grams of fat per RACC. Thus the Product does not meet the total fat requirement in section 101.65(d)(2)(i)(F), and as a result, its use of a "healthy" term renders the Product misbranded.

126.   Under section 101.62(c)(2), a food is "low saturated fat" only if it "contains 1 g or less of saturated fatty acids per reference amount customarily consumed and not more than 15 percent of calories from saturated fatty acids."

127.   The Product contains more than 1 gram of saturated fat per RACC. The Product therefore does not meet the saturated fat requirement in section 101.65(d)(2)(i)(F), and as a result, its use of the term "healthy" as a nutrient content claim renders the Product misbranded.

128.   In sum, the Product bears unauthorized nutrient content claims. The Product does not meet the clear and specific criteria the FDA (and by extension, California) requires for using the term "healthy" in a nutrient content claim  to describe a food.

129.   Danone's use of the term healthy (and variations) to describe the Product not only violates 21 C.F.R. § 101.65 and renders the Product misbranded, but also misleads consumers regarding the nature of the Product, in the specific manner the regulations are intended to prevent.

## VIII.  Plaintiffs' Purchase, Reliance, and Injury

130.    As best she recalls, during the Class Period, Plaintiff Shannon Kawlecki has purchased both the 32-fluid-ounce and the half-gallon sizes of the Product in Original and Vanilla flavors, and purchased the Chocolate flavor in 32-fluid-ounce size. She purchased the Product beginning at least as early as 2015 and as often as once per week and made her purchases from local stores such as the Walmart and Lassen's Natural Food and Vitamins near her home in Bakersfield, California. Ms. Kawlecki consumed the So Delicious Coconut Milk after purchasing it.

131.    At the time of purchase, when deciding to purchase So Delicious Coconut Milk, Plaintiff Shannon Kawlecki read and relied on the following challenged claims on the Product's label:

a.    "Naturally Energizing. Consumption of 'good fats' is an important part of a balanced diet. The fat in coconut milk contains approximately 60% medium chain fatty acids (M.C.F.A.s), which are more easily burned by your body as energy."

b.    Optimized for Maximum Calcium Absorption[:] When it comes to bone strength, more calcium isn't always better. So Delicious Coconut Milk Beverage is fortified with the proper balance of calcium, Magnesium and Vitamin D for maximum calcium absorption."

c.    "nutrition in every sip! Our delicious coconutmilk is a good source of calcium plus an excellent source of vitamin D – nutrients that help maintain healthy bones."

132.    Based on these representations, Plaintiff Kawlecki believed the So Delicious Coconut Milk was a healthy product that would help her maintain healthy bones and decrease the risk of osteoporosis, and would not raise her risk of cardiovascular disease or otherwise detriment her health.

133.    As best she recalls, Evlyn Andrade-Heymsfield has purchased Unsweetened Original and Unsweetened Vanilla So Delicious Coconut Milk, approximately two to three

times, with her last purchase occurring in 2018. She believes she purchased the Product from the Sprouts and Target stores in Santee, and El Cajon, California. Ms. Andrade-Heymsfield consumed the So Delicious Coconut Milk after purchasing it.

134. At the time of purchase, when deciding to purchase So Delicious Coconut Milk, Plaintiff Evlyn Andrade-Heymsfield read and relied on the following challenged claims on the Product's label:

      a.    "nutrition in every sip! Our delicious coconutmilk is a good source of calcium plus an excellent source of vitamin D – nutrients that help maintain healthy bones."

135. Based on these representations, Plaintiff Andrade-Heymsfield believed the So Delicious Coconut Milk was a healthy product that would help her maintain healthy bones and decrease the risk of osteoporosis, and would not raise her risk of cardiovascular disease or otherwise detriment her health.

136. As best she recalls, during the Class Period, Plaintiff Pamela Parra has purchased both the 32-fluid-ounce and the half-gallon sizes of the Product in Original, Unsweetened and Vanilla flavors, and purchased the Chocolate flavor in 32-fluid-ounce size. She purchased the Product and as often as twice per month and she made purchases from local stores such as the Walmart and Whole Foods near her home in Island Park, New York. Ms. Parra consumed the So Delicious Coconut Milk after purchasing it.

137. At the time of purchase, when deciding to purchase So Delicious Coconut Milk, Plaintiff Pamela Parra read and relied on the following claims on the Product's label:

      a.    "Naturally Energizing. Consumption of 'good fats' is an important part of a balanced diet. The fat in coconut milk contains approximately 60% medium chain fatty acids (M.C.F.A.s), which are more easily burned by your body as energy."

      b.    "Optimized for Maximum Calcium Absorption[:] When it comes to bone strength, more calcium isn't always better. So Delicious Coconut Milk Beverage is

fortified with the proper balance of calcium, Magnesium and Vitamin D for maximum calcium absorption."

      c.    "nutrition in every sip! Our delicious coconutmilk is a good source of calcium plus an excellent source of vitamin D – nutrients that help maintain healthy bones."

138.    Based on these representations, Plaintiff Parra believed the So Delicious Coconut Milk was a healthy product that would help her maintain healthy bones and decrease the risk of osteoporosis, and would not raise her risk of cardiovascular disease or otherwise detriment her health.

139.    When purchasing the Product, Plaintiffs were seeking a product to consume, and which had the qualities described on the Product's label, namely, one that was healthful, whose consumption would not increase their risk of CHD, stroke, and other morbidity and help reduce risk of osteoporosis by maintaining their bone health.

140.    The representations on the Product's label, however, were false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiffs and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the Product is not healthful but instead its consumption increases the risk of CHD, stroke, and other morbidity and it conveys a misleadingly simplistic and incomplete picture of what's necessary to maintain healthy bones.

141.    Plaintiffs are not nutritionists, food experts, or food scientists, but rather lay consumers who did not have the specialized knowledge that Danone had regarding the nutrients present in the Product. At the time of purchase, and notwithstanding its saturated fat content, Plaintiffs were unaware that consuming coconut milk, such as So Delicious, adversely affects blood cholesterol levels and increases risk of CHD, stroke, and other morbidity. They were also unaware of the true complexity and multifactorial nature of maintaining bone health and reducing the risk of osteoporosis.

142.     Plaintiffs acted reasonably in relying on the health and wellness claims that Danone intentionally placed on the Product's label with the intent to induce average consumers into purchasing the Product.

143.     Plaintiffs would not have purchased the Product if they knew that it was misbranded pursuant to California, New York, and FDA regulations in that many of its claims were prohibited due to its saturated fat content or insufficient calcium content, and that its labeling claims were false and misleading.

144.     The Product cost more than similar products without misleading, unlawful, and unfair labeling, and would have cost less absent the deceptive, unlawful, and unfair statements.

145.     Plaintiffs paid more for the Product, and would only have been willing to pay less, or unwilling to purchase it at all or less frequently, absent the deceptive, unlawful, and unfair labeling statements complained of herein.

146.     For these reasons, the Product was worth less than what Plaintiffs paid for it.

147.     Instead of receiving a product that had actual healthful qualities, the Product Plaintiffs received was one that is not healthful, but rather its consumption causes increased risk of CHD, stroke, and other morbidity.

148.     Plaintiffs lost money as a result of Danone's deceptive claims and practices in that they did not receive what they paid for when purchasing the Product.

149.     Plaintiffs detrimentally altered their position and suffered damages in an amount equal to the amount they paid for the Product.

150.     Plaintiffs continue to regularly shop at stores where the Product is sold and continue to encounter it when they shop.

151.     Without prospective injunctive relief requiring Defendant to label the Product in a truthful manner, Plaintiffs and other consumers will be unable to determine whether a future label bearing similar claims is valid and the Product has been reformulated and

improved, or whether Defendant has simply continued or resumed its misleading behavior, and thus will be unable to decide how best to spend their money.

152. The continued use of the challenged claims on the Product's label threatens to repeatedly infringe upon the substantive right California's and New York's consumer protection statutes give Plaintiffs to be free from fraud in the marketplace.

153. If Defendant was enjoined from making the deceptive, unlawful, or unfair claims, the market price for So Delicious would drop. While Plaintiffs would not use the Product on a regular basis, if it did not bear any deceptive, unlawful, or unfair claims, and they would not have to pay the premium associate with those claims, Plaintiffs would consider purchasing the Product again and use it in limited amounts on special occasions, for example, when a recipe calls for coconut milk.

154. Even aware of Defendant's misleading labeling, Plaintiffs' substantive rights continue to be violated every time Plaintiffs are exposed to the deceptive, unlawful, and unfair labeling.

155. Danone's senior officers and directors allowed the Product to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## **CLASS ACTION ALLEGATIONS**

156. While reserving the right to redefine or amend the class definition prior to seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent Classes of all persons in California and New York who, at any time from March 15, 2015[63] to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, any So Delicious Coconut Milk Product (the California and New York Classes).

---

[63] Plaintiffs provided Defendant a two week extension to respond to his notice letter, during which Defendant agreed the statute of limitations would be tolled.

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT

157.    The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

158.    Questions of law and fact common to Plaintiffs and the Classes include:

    a.    whether Danone communicated a message regarding healthfulness of the Product through its packaging and advertising;

    b.    whether that message was material, or likely to be material, to a reasonable consumer;

    c.    whether the challenged claims are false, misleading, or reasonably likely to deceive a reasonable consumer;

    d.    whether Danone's conduct violates public policy;

    e.    whether Danone's conduct violates state or federal food statutes or regulations;

    f.    the proper amount of damages, including compensatory, statutory, and punitive damages;

    g.    the proper amount of restitution;

    h.    the proper scope of injunctive relief; and

    i.    the proper amount of attorneys' fees.

159.    These common questions of law and fact predominate over questions that affect only individual Class Members.

160.    Plaintiffs' claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Danone's conduct. Specifically, all Class Members, including Plaintiffs, were subjected to the same misleading, unlawful, and unfair conduct when they purchased the Product, and suffered economic injury because the Product is misrepresented. Absent Danone's business practice of deceptively and unlawfully labeling the Product, Plaintiffs and Class Members would not have purchased the Product.

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT

161. Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods.

162. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

163. Danone has acted on grounds applicable to the Classes, thereby making appropriate final injunctive and declaratory relief concerning the Classes as a whole.

164. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### (By the California Class)

165. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

166. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

167. The acts, omissions, misrepresentations, practices, and non-disclosures of Danone as alleged herein constitute business acts and practices.

### Fraudulent

168. A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying an objective reasonable consumer test.

169. As set forth herein, Danone's claims relating to the Product are likely to deceive reasonable consumers and the public.

**Unlawful**

170.    The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- •        The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

- •        The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

- •        The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*;

- •        The Code of Federal Regulations, 21 C.F.R. § 101.13, *id.* § 101.14, *id.* § 101.65, *id.* § 101.72, *id.* § 131.110, and *id.* § 104.20; and

- •        The California Sherman Food, Drug, and Cosmetic Law.

**Unfair**

171.    Danone's conduct with respect to the labeling, advertising, and sale of the Product was unfair because it harmed Class Members in that they lost money when they bought the Product and it would have cost Danone nothing to refrain from labeling the Product in a misleading, unlawful, or unfair manner.

172.    Danone's conduct with respect to the labeling, advertising, and sale of the Product was further unfair because the increase in profits obtained by Danone through the challenged labeling does not outweigh the harm to Class Members who lost money when they were induced into purchasing the Product believing it was healthful or at least would not detriment health when in fact it does detriment health.

173.    Danone's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

174.    Danone's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

175.   Danone's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

176.   Danone profited from the sale of the falsely, deceptively, and unlawfully advertised Product to consumers.

177.   Plaintiffs and Class Members are likely to continue to be damaged by Danone's deceptive, unfair, and unlawful trade practices, because Danone continues to disseminate deceptive, unfair, and unlawful information. Thus, injunctive relief enjoining Danone's deceptive, unfair, and unlawful labeling practices is proper.

178.   Danone's conduct caused and continues to cause substantial injury to Plaintiffs and other Class Members. Plaintiffs have suffered injury in fact as a result of Danone's unlawful conduct.

179.   In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Danone from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, including removing any misleading, unlawful, or unfair labeling claims, and to commence a corrective advertising campaign.

180.   Plaintiffs and the Class also seek an order for the restitution of all monies from the sale of the Product, which were unjustly acquired through acts of unlawful competition.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

### (By the California Class)

181.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

182.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or

personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

183.   It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

184.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Danone relating to the Product misled consumers acting reasonably as to the healthfulness of the Product.

185.   Plaintiffs suffered injury in fact as a result of Danone's actions as set forth herein because Plaintiffs purchased the Product in reliance on Danone's false and misleading marketing claims stating or suggesting that the Product, among other things, is healthful.

186.   Danone's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Danone has advertised the Product in a manner that is untrue and misleading, which Danone knew or reasonably should have known, and omitted material information from the Product's labeling and advertising.

187.   Danone profited from the sale of the falsely and deceptively advertised Product to consumers.

188.   As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Danone was unjustly enriched.

189.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs, on behalf of themselves and the Class, seek an order enjoining Danone from continuing to engage in deceptive business practices, false advertising, and any other acts prohibited by law, including those set forth in this Complaint.

### THIRD CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act,

### Cal. Civ. Code §§ 1750 *et seq.*

### (By the California Class)

190.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

191.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

192.    Danone's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiffs and Class Members, and violated and continue to violate the following sections of the CLRA:

a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

193.    Danone profited from the sale of the falsely, deceptively, and unlawfully advertised the Product to unwary consumers.

194.    Danone's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

195.    Accordingly, Plaintiffs, on behalf of themselves and the Class, seek injunctive relief under Civil Code § 1782(d) as well as restitution.

196.    Pursuant to California Civil Code § 1782, on or around January 15, 2019, and again on April 18, 2019, Plaintiffs sent written notice of their claims and Danone's particular violations of the Act to Danone by certified mail, return receipt requested.

197.    Because Danone failed to implement remedial measures, Plaintiffs on behalf of themselves and the Class, seek actual and punitive damages, including attorneys' fees.

198.    In compliance with Cal. Civ. Code § 1780(d), Plaintiff, Evelyn Andrade-Heymsfield's affidavit of venue was filed concurrently with the original Complaint.

## FOURTH CAUSE OF ACTION

### Breaches of Express Warranties,

### Cal. Com. Code § 2313(1)

### (By the California Class)

199.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

200.    Through the Product's labeling, Danone made affirmations of fact or promises, or description of goods, that, *inter alia*, the Product is "healthful" and would assist in maintaining healthy bones, thwarting osteoporosis.

201.    These representations, identified in paragraphs 74-80 and 84-87, were "part of the basis of the bargain," in that Plaintiffs and the Class purchased the Product in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

202.    Danone breached its express warranties by selling a Product that is not healthful or composed of good fats and that is not sufficient alone to maintain healthy bones as suggested.

203.    That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiffs and Class Members paid for the Product.

204.    As a result, Plaintiffs seek, on behalf of themselves and the Class, actual damages arising as a result of Danone's breaches of express warranty.

### FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability,

### Cal. Com. Code § 2314

### (By the California Class)

205.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

206.   Danone, through its acts set forth herein, in the sale, marketing, and promotion of the Product, made representations, identified in paragraphs 74-80 and 84-87, to Plaintiffs and the Class that, among other things, the Product is healthful and would assist in maintaining healthy bones, thereby thwarting osteoporosis.

207.   Danone is a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Class, and there was, in the sale to Plaintiffs and other consumers, an implied warranty that those goods were merchantable.

208.   However, Danone breached that implied warranty in that the Product is not healthful or composed of good fats and that is not sufficient to maintain healthy bones as suggested.

209.   As an actual and proximate result of Danone's conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Danone to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

210.   Plaintiffs and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's purchase price.

### SIXTH CAUSE OF ACTION

### Unfair And Deceptive Business Practices,

### N.Y. Gen. Bus. L. § 349

### (By the New York Class)

211.   The New York Plaintiff, Ms. Parra, realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

212.   Danone's conduct constitutes deceptive acts or practices or false advertising in the conduct of business, trade or commerce or in the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

213.   As alleged herein, Danone engaged in, and continues to engage in, deceptive acts and practices by advertising, marketing, distributing, and selling the Product with false or misleading claims and representations as well as by additional deceptive omissions in light of the representations made.

214.   As alleged herein, by misbranding the Product, Danone engaged in, and continues to engage in, unlawful and deceptive acts and practices.

215.   Danone's conduct was materially misleading to Plaintiff and the Class. During the Class Period, Danone carried out a plan, scheme and course of conduct which was consumer oriented.

216.   As a direct and proximate result of Danone's violation of N.Y. Gen. Bus. L. § 349, Plaintiff and the Class were injured and suffered damages.

217.   The injuries to Plaintiff and the Class were foreseeable to Danone and, thus Danone's actions were unconscionable and unreasonable.

218.   Danone is liable for damages sustained by Plaintiff and the Class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349, actual damages or fifty dollars, whichever is greater, or both.

219.   Pursuant to N.Y. Gen. Bus. L. § 349(h), Plaintiff and the Class seek an Order enjoining Danone from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law, including those set forth in this Complaint.

### SEVENTH CAUSE OF ACTION

### False Advertising, N.Y. Gen. Bus. L. § 350

### (By the New York Class)

220.   The New York Plaintiff, Ms. Parra, realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

221.   Danone has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material way (both by affirmative misrepresentations and by material omissions), constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

222.   As a result of Danone's false advertising, Plaintiff and the Class have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for the false and deceptive advertising, and which will continue to occur unless Danone is permanently enjoined by this Court.

223.   Plaintiff Parra and the New York Class seek to enjoin the unlawful acts and practices described herein, and to recover their actual damages or five hundred dollars, whichever is greater, or both such actions, and reasonable attorney fees.

## EIGHTH CAUSE OF ACTION

### Breach of Express Warranty

### NY CLS UCC § 2-313

### (By the New York Class)

224.   The New York Plaintiff, Ms. Parra, realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

225.   In selling the Product to Plaintiff and Class Members, Danone made an affirmation of fact or promise that the Product was "healthful" and would assist in maintaining healthy bones, thwarting osteoporosis (described in paragraphs 74-80 and 84-87), as well as related affirmations of fact, promises, and descriptions, which formed part of the basis of the bargain. Danone thus expressly warranted the goods sold.

226.   The Product does not live up to these affirmations of fact, promises, and descriptions, causing the breach of warranty when Plaintiff and other consumers purchased them.

227.   That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and the Class paid for the Product.

228.   Plaintiff, on behalf of herself and the New York Class, seek actual damages for Danone's breach of warranty.

## **PRAYER FOR RELIEF**

229.   Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated and the general public, pray for judgment against Danone as to each and every cause of action, and the following remedies:

A.   An Order declaring this action to be a proper class action, appointing Plaintiffs as class representatives, and appointing undersigned counsel as class counsel;

B.   An Order requiring Danone to bear the cost of class notice;

C.   An Order compelling Danone to remove any labeling statements determined to be misleading, unlawful, or unfair from the Product and conduct a corrective advertising campaign;

D.   An Order compelling Danone to destroy all misleading and deceptive advertising materials and product labels, and to recall the offending Product;

E. An Order compelling Danone to cease marketing the Product with any deceptive, unlawful, or unfair representations;

F.   An Order requiring Danone to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

G.   An Order requiring Danone to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

H.   An Order requiring Danone to pay compensatory, statutory, and punitive damages as permitted by law;

I.   An award of attorneys' fees and costs; and

J.   Any other and further relief that Court deems necessary, just, or proper.

1

## **JURY DEMAND**

2          230.    Plaintiffs hereby demand a trial by jury on all issues so triable.

3

4     Dated: May 24, 2019              /s/ Paul K. Joseph
5                                      **THE LAW OFFICE OF PAUL K. JOSEPH, PC**
                                       PAUL K. JOSEPH
6                                      *paul@pauljosephlaw.com*
7                                      4125 W. Point Loma Blvd., No. 309
                                       San Diego, CA 92110
8                                      Phone: (619) 767-0356
                                       Fax: (619) 331-2943
9
10                                     ***Counsel for Plaintiffs and the Proposed Class***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2019, I served the foregoing **PLAINTIFFS'** **FIRST AMENDED COMPLAINT** on counsel of record for all parties in this action, by notice of electronic filing, which was automatically generated by the Court's CM/ECF system at the time the document was filed with the Court.


Dated: May 24, 2019                          <u>/s/ Paul K. Joseph</u>

*Andrade-Heymsfield et al. v. Danone US, Inc.*, Case No. 19-cv-0589-CAB-WVG
FIRST AMENDED CLASS ACTION COMPLAINT