UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVLYN ANDRADE-HEYMSFIELD, SHANNON KAWLECKI, and PAMELA PARRA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DANONE US, INC.,<br><br>Defendant. | Case No.: 19-cv-589-CAB-WVG<br><br>**ORDER ON MOTION TO DISMISS [Doc. No. 12]** |

This matter comes before the Court on Defendant's motion to dismiss the first amended complaint ("FAC"). [Doc. No. 12.] The motion has been fully briefed and the Court deems it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Defendant's motion to dismiss is granted.

**I.    BACKGROUND**

Plaintiffs Evlyn Andrade-Heymsfield, Shannon Kawlecki and Pamela Parra, on behalf of themselves, and all others similarly situated, filed the operative first amended complaint ("FAC") in this putative consumer class action complaint against Defendant Danone US, Inc. ("Danone") on May 24, 2019. [Doc. No. 10.] The FAC alleges violations of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq., "CLRA"), Unfair

1

Competition Law (Cal. Bus. & Prof. Code § 17200, et seq., "UCL"), False Advertising Law (*id.* § 17500, et seq., "FAL"), and breaches of express and implied warranties under California law. [*Id.* at ¶ 3.] The FAC also alleges violations of New York's Unfair and Deceptive Business Practices Law, N.Y. Gen. Bus. L. § 349 ("UDBP") and False Advertising Law, N.Y. Gen. BUS. L. § 350, and breaches of express warranties under New York law. [*Id.* at ¶ 4.[1]]

Danone markets, sells, and distributes its line of So Delicious Coconut Milk in various flavors ("Coconut Milk"). [*Id.* at ¶ 2.] The FAC alleges that the Coconut Milk's labels are deceptive, in violation of several federal and California state food regulations. [*Id.* at ¶ 2.]

Plaintiff Kawlecki alleges she purchased and consumed the 32-fluid-ounce and half-gallon sizes of the Coconut Milk in various flavors as early as 2015 and as often as once per week from local stores near Bakersfield, California. [*Id.* at ¶ 130.] At the time of purchase, Kawlecki read and relied upon the following statements on the Coconut Milk labels:

    a. "Naturally Energizing. Consumption of 'good fats' is an important part of a balanced diet. The fat in coconut milk contains approximately 60% medium chain fatty acids (M.C.F.A.s), which are more easily burned by your body as energy." ("Naturally Energizing" statement).

    b. "Optimized for Maximum Calcium Absorption[:] When it comes to bone strength, more calcium isn't always better. So Delicious Coconut Milk Beverage is fortified with the proper balance of calcium, Magnesium and Vitamin D for maximum calcium absorption."

    ("Maximum Calcium Absorption" statement).

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

    c. "nutrition in every sip! Our delicious coconutmilk is a good source of calcium plus an excellent source of vitamin D – nutrients that help maintain healthy bones." ("nutrition in every sip" statement).

[*Id.* at ¶ 131.]

  Plaintiff Andrade-Heymsfield alleges she purchased and consumed various flavors of the Coconut Milk approximately two to three times from stores in Santee and El Cajon, California. [*Id.* at ¶ 133.] At the time of purchase, Andrade-Heymsfield read and relied upon the "nutrition in every sip" statement on the Coconut Milk labels. [*Id.* at ¶ 134.] Plaintiff Parra alleges she purchased and consumed the 32-fluid-ounce and half-gallon sizes of the Coconut Milk in various flavors as often as twice per month from stores near Island Park, New York. [*Id.* at ¶ 136.] At the time of purchase, Parra read and relied upon the "Naturally Energizing," "Maximum Calcium Absorption," and "nutrition in every sip" statements on the Coconut Milk labels. [*Id.* at ¶ 137.]

  The FAC alleges that the statements on the Coconut Milk were "false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiffs and other consumers acting reasonably (including the putative Class) because . . . the [Coconut Milk] is not healthful but instead its consumption increases the risk of [coronary heart disease], stroke, and other morbidity." [*Id.* at ¶ 140.] It also alleges the Coconut Milk "conveys a misleadingly simplistic and incomplete picture of what's necessary to maintain healthy bones." [*Id.*]

  Plaintiffs Kawlecki and Andrade-Heymsfield, California residents, bring this action on behalf of themselves and all others similarly situated in California, alleging violations of California law. [*Id.* at ¶ 3.] Plaintiff Parra, a New York resident, brings this action on behalf of herself and all others similarly situated in New York, alleging violations of New York law. [*Id.* at ¶ 4.]

  Danone now moves to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). [Doc. No. 12.]

## II. REQUEST FOR JUDICIAL NOTICE

At the motion to dismiss stage a court may consider materials incorporated into the complaint or matters of public record without converting the motion to dismiss into a motion for summary judgment. *See Coto Settlement v. Eisenberg.*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citation omitted); *see also* Federal Rules of Evidence 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")

Plaintiffs ask the Court to take judicial notice of five FDA warning letters and an FDA guidance document. [Doc. No. 13-3 at 2.] Danone does not oppose Plaintiffs' request for judicial notice. Accordingly, the Court takes judicial notice of Plaintiffs' exhibits.

## III. STANDING

As a threshold matter, the Court first addresses Danone's contention that Plaintiffs' lack standing to challenge label and website statements that Plaintiffs did not read or rely upon when purchasing the Coconut Milk. [Doc. No. 12-1 at 19–20.] Plaintiff does not oppose Danone's contention, arguing instead that these statements are included for context. [Doc. No. 13 at n.3]

In order to have standing to bring a UCL, FAL, or CLRA claim, Plaintiffs must plead that they relied on the misleading materials. *Delacruz v. Cytosport, Inc.*, No. C 11–3532 CW, 2012 WL 1215243, at *8 (N.D. Cal. Apr. 11, 2012); *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 326 (2011); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111 (S.D. Cal. 2011). A plaintiff is not permitted to support a claim alleging misleading product packaging with statements that he never read or relied upon when making his purchase. *Dvora v. Gen. Mills, Inc.*, No. CV 11–1074–GW(PLAx), 2011 WL 1897349, at *8 (C.D. Cal. May 16, 2011).

Here, Plaintiffs only allege to have read and relied upon the "Naturally Energizing," "Maximum Calcium Absorption," and "nutrition in every sip" statements. Accordingly, Plaintiffs lack standing to bring claims on any label statements on the Coconut Milk itself

or statements on Danone's website that Plaintiffs never read or relied upon when purchasing the Coconut Milk.

## IV.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction. "Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." *Dole Foods Co. Inc. v. Watts*, 303 F. 3d 1104, 1108 (9th Cir. 2002). A court's power to excise personal jurisdiction over a non-resident defendant is limited by two independent constraints: the applicable state personal jurisdiction statute and the constitutional principles of due process. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *see also In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013) ("[p]ersonal jurisdiction over a nonresident defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process."). "Under California's long-arm statute, California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.'" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (quoting Cal. Civ. Proc. Code Ann. § 410.10 (West 2004)). Thus, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-801 (9th Cir. 2004)).

Under the Due Process Clause of the Fourteenth Amendment, to exercise personal jurisdiction over an out-of-state defendant, the defendant must have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted)). This minimum contacts jurisdiction may be either "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction." *Id*. at 919 (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

**B. Analysis**

Danone contends Plaintiff Parra's New York claims are barred under the Supreme Court's holding in *Bristol-Myers Squibb Co. v. Superior Court*, –– U.S. ––, 137 S. Ct. 1773 (2017), because the Court cannot exercise personal jurisdiction over Danone as to claims that have no connection to California. [Doc. No. 12-1 at 14–15.] Parra contends that *Bristol-Myers* is distinguishable because it involved a mass-tort action in which each plaintiff was a named plaintiff, and that regardless of *Bristol-Myers*, the Court can exercise general or pendent jurisdiction over Danone. [Doc. No. 13 at 33–35.]

### a. Bristol-Myers Application

In *Bristol-Myers*, the Supreme Court held that non-forum residents in a mass tort action had not established specific jurisdiction over the defendant as to their state-law claims alleging that they had been injured by the defendant's drug. 137 S. Ct. at 1782. Specifically, the Court reasoned that the non-residents' suit was not sufficiently connected to the forum because the non-residents did not allege that they had bought or been injured by the drug in the forum or that the defendant created or manufactured the drug in the forum. *Id.* at 1781–82. Parra's situation is similar: she is a New York resident who purchased and consumed the Coconut Milk in New York. [Doc. No. 10 at ¶ 136.] She also seeks to represent a class of plaintiffs who reside in and purchased the Coconut Milk in New York.[2] [*Id.* at ¶ 4.]

Danone contends that there is no difference between claims of named plaintiffs in "mass" actions versus "class" actions because each is a real party in interest. The distinction that Parra attempts to make here concerns whether *Bristol-Myers* applies to absent putative class members, not named Plaintiffs. Danone alleges that the majority of courts to consider this issue concluded that each named Plaintiff must demonstrate personal

---

[2] The FAC states that Parra seeks to represent similarly situated consumers in California, but the Court assumes this was an error and Parra seeks to represent similarly situated consumers in New York. [Doc. No. 10 at ¶ 4.]

jurisdiction.

The Court agrees with the line of cases that held *Bristol-Myers* should apply where, as here, non-resident class representatives assert state-law claims against non-resident defendants on behalf of multistate classes as opposed to a nationwide class. *See Reitman v. Champion Petfoods USA, Inc.*, No. CV 18-1736-DOC (JPRx), 2018 WL 4945645, at *5 (C.D. Cal. Oct. 10, 2018) ("'The mere fact that *other* plaintiffs [purchased Champion pet foods or saw pet food packaging] in California—and allegedly sustained the same injuries as did the nonresidents' does not allow this Court to assert specific jurisdiction over the nonresidents' claims." (citing *Bristol-Myers*, 137 S. Ct. at 1781.)); *see also In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16-cv-06391-BLF, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018) (granting motion to dismiss for lack of personal jurisdiction where a named plaintiff sought to represent a statewide class of non-forum residents proceeding under non-forum law).

In the cases Plaintiffs rely on the courts specifically noted that the plaintiffs in those cases sought to represent a nationwide class, which is not the case here. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) (noting that all of the named Plaintiffs in that case were California residents who sought to represent a *nationwide* class.) (emphasis in original); *see also Feller v. Transam. Life Ins. Co.*, No. 2:16–cv–01378–CAS–AJW, 2017 WL 6496803, at *17 (C.D. Cal. Dec. 11, 2017) (noting that the majority in *Bristol-Myers* "did not address the narrow issue of whether its opinion 'would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs.'" (quoting *Bristol-Myers*, 137 S. Ct. at 1789, n. 4 (Sotomayor, J., dissenting)). Accordingly, personal jurisdiction does not exist over Parra's claims.

### b. General Jurisdiction

Plaintiffs' contention that regardless of *Bristol-Myers* the Court can exercise general jurisdiction is mistaken. "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State."

*Bristol–Myers*, 137 S. Ct. at 1780 (emphasis in original) (citing *Goodyear*, 564 U.S. at 919). "But 'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Id*. (quoting *Daimler*, 571 U.S. at 137). "Because the assertion of judicial authority over a defendant is much broader in the case of general jurisdiction than specific jurisdiction, a plaintiff invoking general jurisdiction must meet an 'exacting standard' for the minimum contacts required." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (citing *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1074 (9th Cir. 2011)). "'[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, i.e., comparable to a domestic enterprise in that State.'" *Id*. (quoting *Daimler*, 571 U.S. at 133 n.11). "Such contacts must be 'constant and pervasive.'" *Id*. (citing *Daimler*, 571 U.S. at 122). "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Id*. (citing *Daimler*, 571 U.S. at 137). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Id*. (some internal quotation marks omitted) (quoting *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014)).

Danone is headquartered in New York and incorporated in Delaware. [Doc. No. 10 at ¶ 9.] Consequently, only in an "exceptional case" could they be subject to general jurisdiction in California. *Ranza*, 793 F.3d at 1069 (quoting *Martinez*, 764 F.3d at 1070). The plaintiffs have not met their burden of showing that this is an exceptional case. Plaintiffs allege that Danone and its predecessors have been continuously registered to do business in California since 2005, have designated registered agents in California, maintain manufacturing facilities, research facilities, farm land, purchased multiple companies domiciled in California, and are currently soliciting new employees for at least four different locations in California. [Doc. No. 13 at 34.] These allegations do not suffice to meet the "so continuous and systematic as to render the foreign corporation essentially at home in the forum State" standard that the Supreme Court set out in *Daimler* and *Bristol–Myers*. They are therefore insufficient for general jurisdiction. *Cf. BNSF Ry. Co. v.*

*Tyrrell*, — U.S. —, 137 S. Ct. 1549, 1559 (2017) (defendant railroad had more than 2000 employees and operated over 2000 miles of track in the forum state; that was insufficient for general jurisdiction in that state because "'the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts'" and "in-state business . . . does not suffice to permit the assertion of general jurisdiction") (quoting *Daimler*, 571 U.S. at 139 n.20, 134 S. Ct. 746).

### c. Pendent Personal Jurisdiction

There also is no pendent personal jurisdiction over Danone for Parra's claims. "[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery*, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004). "Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Id*. at 1180–81. Here, there is no federal claim upon which Plaintiffs can hook their state law claims to trigger pendent personal jurisdiction. Accordingly, Plaintiff Parra's New York state law claims are **DISMISSED** for lack of personal jurisdiction without prejudice to re-filing in an appropriate jurisdiction.

### V. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A. Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This is because a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-

moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Federal courts apply this standard regardless of whether the substantive law is state or federal. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). To satisfy the heightened standard of Rule 9(b), the pleadings must be "specific enough to give defendants notice of the particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). Put another way, the pleadings must provide "'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The heightened pleading standard of Rule 9(b) applies to all claims "grounded in fraud" and may include claims where fraud is not a required element. *Id.* at 1103–1104. "Where fraud is not an essential element of a claim, only those allegations of the complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). If the averment fails to meet the heightened standard, then the Court should disregard the fraud allegations and analyze the sufficiency of the claim only as to the non-fraudulent conduct. *Id.*

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### B. Analysis

#### 1. Rule 9(b) Heightened Pleading Standard

Danone contends that the FAC does not identify the specific days, let alone months, on which Plaintiffs purchased the Coconut Milk and the specific label statements viewed during each purchase. [Doc. No. 12-1 at 20–21.] Plaintiffs do not dispute that Rule 9(b)'s pleading requirements apply but contend that they have satisfied the requirements by identifying the particular misconduct alleged. According to Plaintiffs, courts have rejected arguments that require greater specificity regarding the dates of their purchases. [Doc. No. 13 at 15.] Plaintiffs' UCL, CLRA, and FAL claims are grounded in fraud and must meet the heightened pleading requirements of Rule 9(b). *See Kearns*, 567 F.3d at 1125; *see also Vess*, 317 F.3d at 1103–04.

According to the FAC, Kawlecki purchased the Coconut Milk beginning as early as 2015 and as often as once per week from stores near her home in Bakersfield, California. [Doc. No. 10 at ¶ 130.] Furthermore, the FAC alleges that Kawlecki read and relied on the "Naturally Energizing," "Maximum Calcium Absorption," and "nutrition in every sip" statements. [*Id*. at ¶ 131.] For her part Andrade-Heymsfield alleges she purchased the Coconut Milk approximately two to three times, with her last purchase occurring in 2018 from stores in Santee, and El Cajon, California. [*Id*. at ¶ 133.] Andrade-Heymsfield claims she read and relied on the "nutrition in every sip" statement. [*Id*. at ¶ 134.]

Danone contends that some of the challenged label statements were removed years ago and thus Danone cannot assess whether Plaintiffs' claims are barred by the statute of limitations. The Court is not persuaded. Plaintiffs have alleged sufficient time periods of their purchases, the specific products they purchased, and the specific statements they read and relied upon when purchasing the products to give Danone sufficient notice to defend. Accordingly, Plaintiffs have satisfied the heightened pleading requirements of Rule 9(b).

#### 2. Health and Nutrient Content Claims

Plaintiffs allege the Coconut Milk is misbranded under California and Federal law because the challenged label statements make unauthorized "health" and "nutrient content"

claims in violation of FDA regulations. [Doc. No. 10 at ¶¶ 102–129.] Danone contends Plaintiffs are mistaken because the statements at issue do not qualify as health or nutrient content claims. [Doc. No. 12-1 at 21-24.]

A statement is a health claim only if it relates to a health-related condition. General claims of health and wellness are not health claims. *See* 21 C.F.R. § 101.14(a)(1) (stating that a health claim is "any claim . . . that expressly or by implication . . . characterizes the relationship of any substance to a disease or health-related condition"); *see also* FDA, Guidance for Industry: A Food Labeling Guide, at 81 (Jan. 2013), available at https://www.fda.gov/downloads/Food/GuidanceRegulation/UCM265446.pdf ("Both elements of 1) a substance and 2) a disease are present in a health claim."). An implied health claim includes "those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition." *Id*. "Disease or health-related condition means damage to an organ, part, structure, or system of the body such that it does not function properly (e.g., cardiovascular disease), or a state of health leading to such dysfunctioning (e.g., hypertension)." *See* 21 C.F.R. § 101.14(a)(5).

A statement is an implied nutrient content claim if it: "(i) Suggest[s] that a food because of its nutrient content may help consumers maintain healthy dietary practices; and (ii) [Is] made in connection with an explicit or implicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams of fat')." *See* 21 C.F.R. § 101.65(d).

### a. "Maximum Calcium Absorption" Statement

Plaintiffs allege the "Maximum Calcium Absorption" statement is misleading because by touting the Coconut Milk's calcium, vitamin D, and magnesium as being optimized for calcium absorption for "bone strength" the Coconut Milk is making an impermissible health claim regarding osteoporosis. [Doc. No. 10 at ¶¶ 105, 108.]

The "Maximum Calcium Absorption" statement, however, does not mention osteoporosis or any other health-related condition. Rather, it is a permissible

12

structure/function claim as permitted under the FDA's own guidance to its regulations. FDA guidance even lists "calcium helps build strong bones" as a permitted structure/function claim, not a health claim. *See* 65 Fed. Reg. 1000-01, 1033 ("The agency agrees that statements such as 'calcium helps build strong bones' are not health claims because they do not characterize the relationship between a substance and a disease or health-related condition. Rather, such statements are structure/function claims authorized by section 403(r)(6) of the act."). Moreover, the FDA interprets structure/function claims, and health claims, consistently across dietary supplements and conventional foods. *See* 65 Fed. Reg. 1000, 1034 ("FDA advises . . . the agency is likely to interpret the dividing line between structure/function claims and disease claims in a similar manner for conventional foods as for dietary supplements."). Accordingly, Plaintiffs' claim that the "Maximum Calcium Absorption" statement is misleading because the statement makes unauthorized "health" claims is **DISMISSED with prejudice**.

### b. "Nutrition in Every Sip" Statement

Similar to the "Maximum Calcium Absorption" statement, Plaintiffs allege the "nutrition in every sip" statement is misleading because by claiming that calcium and vitamin D are "nutrients that help maintain healthy bones," the Coconut Milk is making an impermissible health claim regarding osteoporosis. [Doc. No. 10 at ¶ ¶ 106, 108.] Plaintiffs further allege the "nutrition in every sip" statement is misleading because by using the term "healthy" the Coconut Milk does not meet the requirements for making such an implied nutrient content claim as set forth in 21 C.F.R. § 101.65(d). [*Id.* at ¶ 118.]

First, similar to the analysis above for the "Maximum Calcium Absorption" statement, the "nutrition in every sip" statement makes permissible structure/function claims. It does not reference osteoporosis and "nutrients that help maintain healthy bones" is a permissible structure/function claim that "describe[s] the role of the nutrient . . . intended to affect normal structure or function in humans" or "characterize the means by which a nutrient . . . acts to maintain such structure or function." *See* 21 C.F.R. § 101.93(f). The claim literally states it "help[s] *maintain*" in reference to bones which appears

13

indistinguishable to the FDA's guidance of a permissible structure/function claim. (emphasis added).

Second, the "nutrition in every sip" statement is not made in connection with an explicit or implicit claim or statement about a nutrient as required by the regulation for implied nutrient content claims such as the cited example, "healthy, contains 3 grams of fat." *See* 21 C.F.R. § 101.65(d). The FDA has clarified that general references to "healthy" do not suggest a nutritional profile of the food, and consumers possess the ability to discern when the word "healthy" is being used to convey that a food has a particular nutrient profile. *See* 59 Fed. Reg. 24232-01, 24235 (noting that the FDA "does not believe that the term 'healthy' inherently implies the absence or presence of a nutrient in a particular amount, or that the food that bears the term necessarily has a nutrient profile that would be helpful to consumers.)." In other words, the word "healthy" in the context of "help maintain healthy bones" is not necessarily describing the Coconut Milk itself as "healthy" on its own. Accordingly, Plaintiffs' claim that the "nutrition in every sip" statement is misleading because the statement makes unauthorized "health" or "nutrient content" claims is **DISMISSED with prejudice.**

### 3. Deception

Separately, even if the "Maximum Calcium Absorption" and "nutrition in every sip" statements are not subject to dismissal as discussed in the previous section, they, along with the "Naturally Energizing" statement must be dismissed if the FAC does not plausibly allege deception as Danone contends. Specifically, Danone contends Plaintiffs cannot point to any material misrepresentation or material omission that satisfies the "reasonable consumer" standard. [Doc. No. 12-1 at 25-29.] *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).

Under this standard, plaintiffs must show that "members of the public are likely to be deceived." *Id.* This "likely to be deceived" standard requires more than a mere possibility that an advertisement will be misunderstood by a few consumers. *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, it requires a probability

"that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Id.* Further, allegations of deception must be assessed according to what the advertisement or label depicts and actually says, and not allegations of implied meaning. *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003); *see also Resort Car Rental System, Inc. v. F.T.C.*, 518 F.2d 962, 964 (9th Cir. 1975).

Plaintiffs allege the Coconut Milk is misleading as to its healthfulness because the statements at issue reinforce a wellness message and that numerous courts have found that similar wellness claims are actionable where the product contained other unhealthy substances. Plaintiffs further allege: (1) that the claim from the "Naturally Energizing" statement that "coconut milk contains approximately 60% medium chain fatty acids (M.C.F.A.s)" is false because lauric acid "is not properly characterized as a medium chain triglyceride;" (2) that the Coconut Milk's bone health claims are misleading because the product is actually unhealthy making it harder to maintain healthy bones or reduce risk of osteoporosis; and (3) that Danone intentionally omits material information regarding the dangers of consuming the Coconut Milk.

The Court is not persuaded that a reasonable consumer is "likely to be deceived" by any "wellness claims", or that acting reasonably under the circumstances a consumer would be unable to decide for themselves from the statements at issue how healthy the Coconut Milk is. *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) ("utterly implausible that . . . consumers would see an undisputedly true statement about fat and then . . . conclude the Products 'made only positive contributions to a diet.'"). The Coconut Milk and the statements at issue make no reference to reducing osteoporosis as Plaintiffs attempt to claim. Plaintiffs' allegations that the Coconut Milk labels are false and misleading are largely dependent on the implied meaning and inclusion of numerous statements from the Coconut Milk labels and Danone's websites that would somehow lead a reasonable consumer to be deceived about the nutritional benefits of consuming the Coconut Milk. Likewise, Plaintiffs' contentions that Danone intentionally omits material

15

information regarding the dangers of consuming Coconut Milk are dependent on a mischaracterization of the Coconut Milk being advertised to reduce osteoporosis which is simply not the case. Plaintiffs allege that Danone intentionally omits material information given its representations like "good fats" and "nutrition in every sip" and those regarding its effects on bone health and osteoporosis. As Danone points out, the Coconut Milk accurately discloses its fat content, the FDA has concluded calcium and vitamin D indeed support healthy bones, and the Coconut Milk does not claim to treat or prevent osteoporosis.

Common sense dictates that an overall healthful diet is also necessary, and Plaintiffs cannot claim deception on label statements modeled on FDA guidance. *Stuart v. Cadbury Adams USA, LLC*, 458 Fed. App'x 689, 691 (9th Cir. Nov. 21, 2011) ("[o]nly an unreasonable consumer would be confused or deceived by [label's] failure to clarify that Trident White gum works only if consumers continue to brush and floss regularly.") (emphasis added).

Accordingly, Plaintiffs have failed to plausibly plead deception and the UCL, FAL, and CLRA claims with respect to the "Naturally Energizing," "Maximum Calcium Absorption," and "nutrition in every sip" statements are **DISMISSED with prejudice**.[3]

### 4. Breach of Express and Implied Warranty

Danone contends that Plaintiffs' breach of express and implied warranty claims both fail. The breach of express warranty claim fails because the Coconut Milk never warranted a perfectly "healthy" product by some undefined measure of cardiovascular health, and no warranty was therefore breached. The breach of implied warranty claim fails for the same

---

[3] In light of the foregoing, the Court need not address Danone's arguments that the California claims for equitable restitution and injunctive relief should be dismissed because the California claims are dismissed for failure to state a plausible claim. Likewise, the Court need not address Danone's arguments that specific claims made in the nutrition in every sip statement are preempted because Plaintiffs' claims are dismissed with prejudice as previously stated.

reason, and because Plaintiffs are not in privity with Danone. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).

A breach of the express warranty claim requires that a plaintiff allege the "exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff's injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986). "To constitute a warranty and be actionable, the statement must be 'specific and unequivocal.'" *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1236 (C.D. Cal. 2008).

Plaintiffs' contentions of breach of express and implied warranty are all predicated on alleged promises of a healthy product when that is not the case. The phrases Plaintiffs allege breach such warranties are permissible claims under FDA guidelines and accurately describe the product. *See Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893-94 (C.D. Cal. 2013) (dismissing plaintiff's express warranty claim predicated on the term "all natural flavors" because this phrase "accurately describes the product"); *McKinnis v. Kellog USA*, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) (same); *see also Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (holding that "generalized, vague, and unspecific assertions constitute[e] mere 'puffery' upon which a reasonable consumer [cannot] rely."). Finally, Plaintiffs have not alleged sufficient facts to infer Plaintiffs suffered an injury that was proximately caused by the alleged breach. Therefore, Plaintiffs' claims for breach of express and implied warranty fail.

Even if the breach of implied warranty claim did not fail for the reasons set forth above, no exception to the privity requirement applies here. The Coconut Milk must have "physically injured" Plaintiffs in order for "the exception to the privity requirement to apply," which did not occur here. *Hammock v. Nutramarks, Inc.*, 2016 WL 4761784, at *5 (S.D. Cal. Sept. 12, 2016). Accordingly, Plaintiffs' claims for breach of express and implied warranty are **DISMISSED with prejudice**.

## VI. CONCLUSION

For the reasons set forth above, Danone's motion to dismiss is **GRANTED** and the FAC is **DISMISSED with prejudice**.

It is **SO ORDERED.**

Dated: August 14, 2019

Hon. Cathy Ann Bencivengo
United States District Judge